No. 23-13727

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

DISABILITY RIGHTS FLORIDA, et al.

*Plaintiffs-Appellants*,

v.

FLORIDA SECRETARY OF STATE, et al.

*Defendants-Appellees*,

and

REPUBLICAN NATIONAL COMMITTEE, et al.

*Intervenor-Defendants–Appellees*.

On Appeal from the United States District Court
for the Northern District of Florida
No. 4:23-cv-111 (Winsor, J.)

### Plaintiffs-Appellants' Opening Brief

| | |
|---|---|
| Frederick S. Wermuth | Abha Khanna* |
| KING, BLACKWELL, ZEHNDER & | ELIAS LAW GROUP LLP |
| WERMUTH, P.A. | 1700 Seventh Ave., Suite 2100 |
| P.O. Box 1631 | Seattle, Washington 98101 |
| Orlando, FL 32802-1631 | Telephone: (206) 656-0177 |
| Telephone: (407) 422-2472 | |
| | Justin Baxenberg* |
| | Alexander F. Atkins* |
| | Renata O'Donnell* |
| | ELIAS LAW GROUP LLP |
| | 250 Massachusetts Ave NW, Ste. 400 |
| | Washington, DC 20001 |
| | Telephone: (202) 968-4490 |
| | |
| | *Admitted Pro Hac Vice* |
| | |
| | *Counsel for Plaintiffs-Appellants* |

*No. 23-13727, Disability Rights Fla. v. Fla. Sec'y of State*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1, Plaintiffs-Appellants certify that Vote.org, Florida State Conference of Branches and Youth Units of the NAACP, Disability Rights Florida, and Florida Alliance for Retired Americans each has no parent corporation, and no publicly held corporation owns 10% or more of any of those entities' stock.

Under Circuit Rule 26.1-1(a)(3) Plaintiffs-Appellants further certify that the following have an interest in the outcome of this case:

1. Adkins, Janet, *Defendant*

2. Andersen, Mark, *Defendant*

3. Anderson, Chris, *Defendant*

4. Anderson, Shirley, *Defendant*

5. Arnold, Melissa, *Defendant*

6. Arrington, Mary Jane, *Defendant*

7. Atkins, Alexander, *Counsel for Plaintiffs*

8. Baird, Maureen, *Defendant*

9. Balsley Berlin, Holly, *Counsel for United States*

10. Bardos, Andy, *Counsel for Defendants*

11. Barton, Kim, *Defendant*

12. Baxenberg, Justin, *Counsel for Plaintiffs*

*No. 23-13727, Disability Rights Fla. v. Fla. Sec'y of State*

13.    Beato, Michael, *Counsel for Defendant*

14.    Benda, Kyle, *Counsel for Defendant*

15.    Bennett, Michael, *Defendant*

16.    Bentley, Morgan, *Counsel for Defendant*

17.    Blazier, Melissa, *Defendant*

18.    Bledsoe, William, *Counsel for Defendant*

19.    Bobanic, Tim, *Defendant*

20.    Byrd, Cord, *Defendant*

21.    Cannon, Starlet, *Defendant*

22.    Chambless, Chris, *Defendant*

23.    Chason, Sharon, *Defendant*

24.    Conyers, Grant, *Defendant*

25.    Corley, Brian, *Defendant*

26.    Cowles, Bill, *Defendant*

27.    Davis, Ashley, *Counsel for Defendant*

28.    Davis, Vicky, *Defendant*

29.    Dickey, Gilbert, *Counsel for Intervenor-Defendant*

30.    Disability Rights Florida, *Plaintiff*

31.    Doyle, Tommy, *Defendant*

32.    Driggers, Heath, *Defendant*

*No. 23-13727, Disability Rights Fla. v. Fla. Sec'y of State*

33.    Dunaway, Carol, *Defendant*

34.    Earley, Mark, *Defendant*

35.    Edwards, Jennifer, *Defendant*

36.    Edwards, Lori, *Defendant*

37.    Erdelyi, Susan, *Counsel for Defendants*

38.    Farnam, Aletris, *Defendant*

39.    Feiser, Craig, *Counsel for Defendant*

40.    Florida Alliance for Retired Americans, *Plaintiff*

41.    Florida State Conference of Branches and Youth Units of the NAACP, *Plaintiff*

42.    Gibson, Benjamin, *Counsel for Intervenor-Defendants*

43.    Glickman, Jessica, *Counsel for Defendant*

44.    Graham, William, *Counsel for Defendant*

45.    Green, Tyler, *Counsel for Intervenor-Defendants*

46.    Griffin, Joyce, *Defendant*

47.    Guzzo, Sophia, *Counsel for Defendant*

48.    Hankins, Christi, *Counsel for Defendant*

49.    Hanlon, John, *Defendant*

50.    Hart, Travis, *Defendant*

51.    Hays, Alan, *Defendant*

*No. 23-13727, Disability Rights Fla. v. Fla. Sec'y of State*

52.    Healy, Karen, *Defendant*

53.    Herron, Mark, *Counsel for Defendant*

54.    Holland, Jerry, *Defendant*

55.    Hutto, Laura, *Defendant*

56.    Jarone, Joseph, *Counsel for Defendant*

57.    Jazil, Mohammad, *Counsel for Defendant*

58.    Johnson, Diana, *Counsel for Defendant*

59.    Jonas, Sarah, *Counsel for Defendant*

60.    Jones, Tammy, *Defendant*

61.    Jouben, Jon, *Counsel for Defendant*

62.    Keen, William, *Defendant*

63.    Khanna, Abha, *Counsel for Plaintiffs*

64.    Kinsey, Jennifer, *Defendant*

65.    Klitsberg, Nathaniel, *Counsel for Defendant*

66.    Knight, Shirley, *Defendant*

67.    Latimer, Craig, *Defendant*

68.    LaVia, John, III, *Counsel for Defendants*

69.    Lenhart, Kaiti, *Defendant*

70.    Lewis, Lisa, *Defendant*

71.    Link, Wendy, *Defendant*

*No. 23-13727, Disability Rights Fla. v. Fla. Sec'y of State*

72. Lux, Paul, *Defendant*

73. Marcus, Julie, *Defendant*

74. Mari, Frank, *Counsel for Defendants*

75. Markarian, David, *Counsel for Defendant*

76. McCarthy, Thomas, *Counsel for Intervenor-Defendants*

77. Meros, Nicholas, *Counsel for Defendant*

78. Messer, Ryan, *Defendant*

79. Milligan, Michelle, *Defendant*

80. Milton, Christopher, *Defendant*

81. Morgan, Joseph, *Defendant*

82. Negley, Mark, *Defendant*

83. Nordby, Daniel, *Counsel for Intervenor-Defendants*

84. Norris, Cameron, *Counsel for Intervenor-Defendants*

85. O'Donnell, Renata, *Counsel for Plaintiffs*

86. Oakes, Vicky, *Defendant*

87. Olivo, Geraldo, III, *Counsel for Defendant*

88. Osborne, Deborah, *Defendant*

89. Overturf, Charles, *Defendant*

90. Perez, Devona Reynolds, *Counsel for Defendant*

91. Republican National Committee, *Intervenor-Defendant*

*No. 23-13727, Disability Rights Fla. v. Fla. Sec'y of State*

92.    Republican Party of Pasco County, *Intervenor-Defendant*

93.    Riley, Heather, *Defendant*

94.    Ritter, Quinn, *Counsel for Plaintiffs*

95.    Rudd, Carol, *Defendant*

96.    Sanchez, Connie, *Defendant*

97.    Scott, Dale, *Counsel for Defendant*

98.    Scott, Joe, *Defendant*

99.    Seyfang, Amanda, *Defendant*

100.    Shannin, Nicholas, *Counsel for Defendant*

101.    Shaud, Matthew, *Counsel for Defendant*

102.    Smith, Diane, *Defendant*

103.    Southerland, Dana, *Defendant*

104.    Stafford, David, *Defendant*

105.    Stewart, Gregory, *Counsel for Defendant*

106.    Stinton Brown, Tomi, *Defendant*

107.    Swain, Robert, *Counsel for Defendant*

108.    Swan, Leslie, *Defendant*

109.    Taylor, Sherry, *Defendant*

110.    Todd, Stephen, *Counsel for Defendant*

111.    Turner, Ron, *Defendant*

*No. 23-13727, Disability Rights Fla. v. Fla. Sec'y of State*

112.    United States of America, *Interested Party*

113.    Valdes, Michael, *Counsel for Defendant*

114.    Valenti, Leah, *Defendant*

115.    Van De Bogart, Joseph, *Counsel for Defendant*

116.    Vicari, Kelly, *Counsel for Defendant*

117.    Villane, Tappie, *Defendant*

118.    Vote.org, *Plaintiff*

119.    Walker, Gertrude, *Defendant*

120.    Wermuth, Frederick, *Counsel for Plaintiffs*

121.    White, Christina, *Defendant*

122.    Wilcox, Wesley, *Defendant*

123.    Williams, Russell, *Defendant*

124.    Winsor, Allen C., *U.S. District Court Judge*

125.    Woodfin, Conor, *Counsel for Intervenor-Defendants*


/s/ *Frederick S. Wermuth*

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiffs respectfully request oral argument, as this appeal presents an important question of federal law that is of great significance to voters and civic organizations across Florida.

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

JURISDICTIONAL STATEMENT ........................................................................2

STATEMENT OF THE ISSUE...............................................................................3

STATEMENT OF THE CASE ................................................................................3

STANDARD OF REVIEW .....................................................................................6

SUMMARY OF THE ARGUMENT ......................................................................6

ARGUMENT ...........................................................................................................7

    I.    Plaintiffs adequately pleaded that the Wet Signature Requirement violates the Materiality Provision.................................................................7

        A. The Wet Signature Requirement denies the right to vote within the meaning of the Materiality Provision. .......................................................8

        B. The method by which a prospective voter signs their registration application is not material in determining their qualifications.................10

    II.    Plaintiffs adequately pleaded standing. .......................................................13

        A. Florida NAACP, Vote.org, and DRF have organizational standing.........13

        B. DRF, Florida Alliance, and Florida NAACP have associational standing...............................................................................................17

CONCLUSION ......................................................................................................20

# TABLE OF CITATIONS

**Page(s)**

**Statutes**

28 U.S.C. § 1291 ................................................................................2

28 U.S.C. § 1331 ................................................................................2

29 U.S.C. § 794e(f)(6) .......................................................................18

42 U.S.C. § 15043(a)(2)(A)(i) ............................................................16

42 U.S.C. § 15044(a)(1)(B) ...............................................................18

42 U.S.C. § 15044(a)(5) .....................................................................18

52 U.S.C. § 10101(a)(2)(B) ......................................................... passim

52 U.S.C. § 21061(a) .........................................................................16

Fla. Stat. § 97.041 .........................................................................4, 10

Fla. Stat. § 97.053(5)(a)(8) ....................................................... 1, 2, 3, 12

**Cases**

*Arcia v. Fla. Sec'y of State*,
    772 F.3d 1335 (11th Cir. 2014) ................................................ 14, 19

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................6

*Chaparro v. Carnival Corp.*,
    693 F.3d 1333 (11th Cir. 2012) ......................................................6

*Common Cause/Ga. v. Billups*,
    554 F.3d 1340 (11th Cir. 2009) ................................................ 15, 19

*Diaz v. Cobb*,
    435 F. Supp. 2d 1206 (S.D. Fla. 2006) ...........................................10

* *Doe v. Stincer*,
    175 F.3d 879 (11th Cir. 1999) ...................................... 16, 17, 18, 19

\* *Fla. State Conf. of NAACP v. Browning*,
　　522 F.3d 1153 (11th Cir. 2008) ........................................................ 12, 15, 17, 20

\* *Ga. Ass'n of Latino Elected Offs., Inc. v. Gwinnett Cnty. Bd. of Registration & Elections*,
　　36 F.4th 1100 (11th Cir. 2022) ....................................................... 5, 14, 15

*Ga. Latino All. for Hum. Rts. v. Gov. of Ga.*,
　　691 F.3d 1250 (11th Cir. 2012) ...........................................................15

*Havens Realty Corp. v. Coleman*,
　　455 U.S. 363 (1982)...............................................................................15

*Hopper v. Solva Pharms., Inc.*,
　　588 F.3d 1318 (11th Cir. 2009) ...............................................................6

*Hunt v. Wash. State Apple Advert. Comm'n*,
　　432 U.S. 333 (1977)...............................................................................18

*La Unión del Pueblo Entero v. Abbott*,
　　604 F. Supp. 3d 512 (W.D. Tex. 2022) .................................................9

*Lawrence v. Dunbar*,
　　919 F.2d 1525 (11th Cir. 1990) ...............................................................6

*Mi Familia Vota v. Fontes*,
　　No. CV-22-00509-PHX-SRB, 2023 WL 8183070 (D. Ariz. Feb. 16, 2023)..9, 12

*Migliori v. Cohen*,
　　36 F.4th 153 (3d Cir.) ..........................................................................11

*Real Alts., Inc. v. Sec'y Dep't of Health & Hum. Servs.*,
　　867 F.3d 338 (3d Cir. 2017)..................................................................11

*Ritter v. Migliori*,
　　143 S. Ct. 297 (2022)............................................................................11

*Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*,
　　547 U.S. 47 (2006)................................................................................13

*Schalamar Creek Mobile Homeowner's Ass'n, Inc. v. Adler*,
  855 F. App'x 546 (11th Cir. 2021) ...................................................................17

*Schwier v. Cox*,
  340 F.3d 1284 (11th Cir. 2003) .........................................................................5

\* *Schwier v. Cox*,
  412 F. Supp. 2d 1266 (N.D. Ga. 2005) ...........................................................9, 11

\* *Schwier v. Cox*,
  439 F.3d 1285 (11th Cir. 2006) .........................................................................9

*Sixth Dist. of Afr. Methodist Episcopal Church v. Kemp*,
  574 F. Supp. 3d 1260 (N.D. Ga. 2021) ............................................................9

*United States v. Munsingwear*,
  340 U.S. 36 (1950) .............................................................................................11

*Vote.org v. Callanen*,
  89 F.4th 459 (5th Cir. 2023) ..........................................................................9, 16

*Vote.org v. Ga. State Election Bd.*,
  661 F. Supp. 3d 1329 (N.D. Ga. 2023) ............................................................12

*Wash. Ass'n of Churches v. Reed*,
  492 F. Supp. 2d 1264 (W.D. Wash. 2006) .......................................................11

*Yelapi v. DeSantis*,
  525 F. Supp. 3d 1371 (N.D. Fla. 2021) ...........................................................18

## INTRODUCTION

This appeal centers on the proper application of the Materiality Provision of the Civil Rights Act. The district court erroneously evaluated the "solemnity" of the challenged signature requirement, instead of its "materiality," and thus held that a qualified voter can be prevented from registering to vote solely because of the way in which they sign their voter registration application. Federal law prohibits this result. Because Plaintiffs adequately pleaded a violation of the Materiality Provision, the district court's dismissal of Plaintiffs' claim should be reversed, and the case remanded for further proceedings.

The Materiality Provision of the Civil Rights Act prohibits rejecting voter registration applications due to errors or omissions that are immaterial to determining an applicant's qualifications to vote under state law. 52 U.S.C. § 10101(a)(2)(B). At issue in this case is Fla. Stat. § 97.053(5)(a)(8), which requires that prospective voters who have not provided an electronic signature to the Department of Highway Safety and Motor Vehicles (DMV) complete a paper registration application signed with their "original signature." Florida election officials—including Defendants—interpret this to mean that paper applications must be rejected unless they include the applicant's handwritten signature in wet ink (the "Wet Signature Requirement"). As a result, a paper application submitted with any other type of signature—*e.g.*, an electronic or imaged signature—is not considered

complete and these applicants are not registered to vote. *See id*. Because whether an application bears a wet-ink signature is immaterial to determining a prospective voter's qualifications under Florida law, Plaintiffs challenged the Wet Signature Requirement as violative of the Materiality Provision.

The district court's dismissal of Plaintiffs' claim—based solely on its conclusion that a wet-ink signature purportedly "carries a solemn weight," App. 337—misunderstands and misapplies the Materiality Provision. The relevant question is whether the challenged requirement is material to determining voter qualifications—not whether it might have some other justification. Plaintiffs sufficiently pleaded that a wet signature provides no more insight into a voter's qualifications than any other type of signature. The district court's order therefore must be reversed.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 1331 because Plaintiffs alleged violations of federal law. This Court has jurisdiction under 28 U.S.C. § 1291, as a timely appeal from a final decision of the district court. Judgment dismissing all parties' claims was entered on November 8, 2023, and Plaintiffs' Notice of Appeal was filed on November 13, 2023.

## STATEMENT OF THE ISSUE

Whether Appellants have sufficiently pleaded that the Wet Signature Requirement is not material to determining the qualifications of Florida voters.

## STATEMENT OF THE CASE

Florida law requires any prospective voter who has not provided an electronic signature to the DMV to complete a paper registration application signed with their "original signature." Fla. Stat. § 97.053(5)(a)(8). Florida election officials interpret this to mean that paper applications must be rejected unless they include the applicant's handwritten signature in wet ink (the "Wet Signature Requirement"). App. 054. As a result, a prospective voter who submits a paper application with any other type of signature—*e.g.*, an electronic or imaged signature—will not be registered to vote. App. 053–54.

Plaintiffs alleged that the Wet Signature Requirement violates the Materiality Provision of the Civil Rights Act. App. 055–58. The Materiality Provision prohibits rejecting a voter registration application due to an "error or omission" that is "not material in determining whether [an] individual is qualified under State law to vote." 52 U.S.C. § 10101(a)(2)(B). Under Florida law, a person is qualified to register and vote if they are 18 years old by election day; a U.S. citizen; a legal resident of Florida and the county in which they wish to register; and, if they have been convicted of a felony or adjudicated mentally incapacitated with respect to voting, have had their

3

rights restored. Fla. Stat. § 97.041. Plaintiffs alleged that the method of signing a voter registration application bears no relation to these qualifications, and that the Wet Signature Requirement does not serve any material purpose within the meaning of the Civil Rights Act. App. 037–38, 057–58.

Defendant Secretary of State and ten Defendant Supervisors of Elections moved to dismiss, and Intervenors separately moved to dismiss. App. 110–31; App. 133–70.[1] Defendants and Intervenors argued, among other things, that the Wet Signature Requirement is material and that Plaintiffs lack both standing and a cause of action to challenge the Wet Signature Requirement. App. 133–70; App. 110–31. The United States submitted a Statement of Interest, disputing several of the arguments that Defendants and Intervenors made in the motions to dismiss, including that private plaintiffs lack a cause of action to enforce the Materiality Provision; that the Provision applies only in the context of racial discrimination; and that the Provision applies only to ad hoc executive actions. App. 183, 189, 199.

The district court declined to dismiss based on Defendants' and Intervenors' procedural and jurisdictional arguments. First, the court rejected Defendants' argument that private plaintiffs cannot bring a claim under the Materiality Provision, noting binding Eleventh Circuit precedent to the contrary. App. 328–29, n.3 (citing

---

[1] Although not every Defendant moved to dismiss, the district court ultimately dismissed Plaintiffs' claim against every Defendant. App. 342.

4

*Schwier v. Cox*, 340 F.3d 1284, 1297 (11th Cir. 2003)). Second, the court held that Plaintiff Florida NAACP sufficiently pleaded standing based on allegations that it diverts resources away from other projects to address the harms allegedly caused by the Wet Signature Requirement. App. 326.[2] Third, the court discussed—but did not render any decision with respect to—Defendants' argument that organizations lack a statutory right to enforce the Materiality Provision. App. 331. Finally, the court rejected Intervenors' argument that the Materiality Provision is limited to claims involving racial discrimination. App. 335.

The district court then proceeded to consider the argument that Plaintiffs failed to state a claim under Federal Rule of Civil Procedure 12(b)(6) and ultimately granted the motion to dismiss on those grounds. Specifically, the district court reasoned that, while "Plaintiffs' entire premise is that a copied, faxed, or otherwise non-original signature is equal in stature to an original, wet signature," "we know this not to be so" because "original signatures carry different weight than other 'signatures.'" App. 337–38. For that reason, the district court held that Plaintiffs'

---

[2] Because it held that Florida NAACP had organizational standing to seek injunctive relief, the district court did not need "to address the parties' arguments as to the other Plaintiffs' standing or as to the NAACP's associational standing." App. 326 (citing *Ga. Ass'n of Latino Elected Offs., Inc. v. Gwinnett Cnty. Bd. of Registration & Elections*, 36 F.4th 1100, 1113 (11th Cir. 2022)). Recognizing, however, this Court's independent obligation to ensure it has jurisdiction, Plaintiffs lay out each of the independent bases for their standing in their argument below.

allegations did not "plausibly show that the wet-signature requirement is immaterial," and dismissed Plaintiffs' claim. App. 338.

Plaintiffs timely appealed to this Court.

## STANDARD OF REVIEW

The standard of review is de novo. *Hopper v. Solva Pharms., Inc.*, 588 F.3d 1318, 1324 (11th Cir. 2009). In reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim or a facial attack on subject matter jurisdiction under Rule 12(b)(1), the court accepts the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir. 2012); *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990). The court must deny a motion to dismiss so long as the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted).

## SUMMARY OF THE ARGUMENT

The Materiality Provision of the Civil Rights Act prohibits government officials from denying otherwise qualified individuals the right to vote based on errors or omissions on documents related to voting that are immaterial to the potential voter's qualifications. 52 U.S.C. § 10101(a)(2)(B). Plaintiffs allege that Florida's Wet Signature Requirement violates the Materiality Provision because it

requires state election officials to refuse some voter registration applications based on the manner in which they are signed—an error or omission that has no bearing on whether the applicant meets Florida's qualifications to be able to vote, which are limited to the material questions of the voter's age, citizenship, residency, and adjudicated legal status.

The district court correctly held that Plaintiffs sufficiently pleaded standing. But the district court improperly dismissed Plaintiffs' claim based solely on its determination that some signatures, including the signature on a voter registration form, "carry different weight than other signatures." App. 337 (internal quotation marks omitted). The question under the Materiality Provision is whether a requirement is material to determining voter qualifications—not whether it is material to some other purported state interest. Because the manner in which voters sign voter registration applications is immaterial to voter qualifications, this Court should reverse and remand to the district court for further proceedings.

## ARGUMENT

## I.    Plaintiffs adequately pleaded that the Wet Signature Requirement violates the Materiality Provision.

The Materiality Provision of the Civil Rights Act requires that, "[n]o person acting under color of law shall . . . deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any . . . registration . . . requisite to voting" if the error or omission is "*not material* in

7

determining whether such individual is qualified under State law to vote in such election." 52 U.S.C. § 10101(a)(2)(B) (emphasis added). The refusal to accept voter registration applications because of the manner in which the applications are signed—something that is plainly not material to an applicant's satisfaction of the necessary qualifications to vote in Florida—violates this Provision, and the district court's conclusion that Plaintiffs failed to state a claim because a wet signature is weightier or carries greater solemnity was error.

### A. The Wet Signature Requirement denies the right to vote within the meaning of the Materiality Provision.

Plaintiffs adequately alleged that enforcement of the Wet Signature Requirement denies the right to vote under the Materiality Provision. App. 037–38. The district court did not find otherwise, basing its decision on an erroneous application of the Materiality Provision, not the adequacy of Plaintiffs' factual allegations.

A prospective voter's use of a non-wet signature to certify their voter registration application indisputably is an "error or omission" on a "record or paper relating to any . . . registration." 52 U.S.C. § 10101(a)(2)(B). Under the Wet Signature Requirement, this "error or omission" results in "den[ial] [of] the right . . . to vote." *Id*. For purposes of the Materiality Provision, the term "vote" definitionally "includes all action necessary to make a vote effective including, but not limited to, registration." 52 U.S.C. § 10101(e). The "right to vote" encompasses

8

the right to *register* to vote, and denying the registration application of an otherwise qualified voter is therefore a denial of the right to vote. *See id.* § 10101(a)(2)(B); *Schwier v. Cox*, 412 F. Supp. 2d 1266, 1276 (N.D. Ga. 2005) (finding registration requirement violated Materiality Provision), *aff'd* 439 F.3d 1285 (11th Cir. 2006).

That an applicant can later successfully submit an application does not preclude a Materiality Provision violation; otherwise, it would be permissible under the Materiality Provision to repeatedly reject voter registration applications for any reason or none at all, so long as the applicant could eventually successfully register. There is no reason to believe Congress intended the Materiality Provision to be so easily evaded, and courts have uniformly interpreted the Provision in this way. *See, e.g.*, *Mi Familia Vota v. Fontes*, No. CV-22-00509-PHX-SRB, 2023 WL 8183070, at *18 n.17 (D. Ariz. Feb. 16, 2023) (finding "cure provision . . . does not warrant dismissing [] § 10101 claim"); *La Unión del Pueblo Entero v. Abbott*, 604 F. Supp. 3d 512, 541 (W.D. Tex. 2022) (holding Materiality Provision "does not only apply when a voter is absolutely prohibited from voting"); *Sixth Dist. of Afr. Methodist Episcopal Church v. Kemp*, 574 F. Supp. 3d 1260, 1282 (N.D. Ga. 2021) (rejecting argument at motion to dismiss stage that "opportunity to cure an error rehabilitates any potential violation" of Materiality Provision); *cf. Vote.org v. Callanen*, 89 F.4th 459, 487 (5th Cir. 2023) ("[T]he *need* to cure an immaterial requirement creates a hurdle for—even if it is not itself a final denial of—the right to vote.").

9

**B.    The method by which a prospective voter signs their registration application is not material in determining their qualifications.**

The qualifications to vote under Florida law are straightforward: a person is qualified if they will be 18 years old by election day; are a U.S. citizen and a legal resident of Florida and the county in which they wish to register; and, if they have been convicted of a felony or adjudicated mentally incapacitated with respect to voting, have had their rights restored. Fla. Stat. § 97.041. The Materiality Provision asks whether the way in which an applicant signs a voter registration application is "material" to any of these qualifications. 52 U.S.C. § 10101(a)(2)(B). Plainly, it is not: a voter who signs a registration application in ink is no more or less likely to satisfy the age, residency, or background requirements than a voter who signs a registration application in a different manner. *Cf. Diaz v. Cobb*, 435 F. Supp. 2d 1206, 1213 (S.D. Fla. 2006) (recognizing that signing oath on registration application encompasses qualifications to vote but that "failure to follow needlessly technical instructions, such as the color of ink to use in filling out the form" is an immaterial error).

The district court erred by shifting the analysis away from whether the form of signature is material to determining a voter's qualifications to whether "a copied, faxed, or otherwise non-original signature is equal in stature to an original, wet signature." App. 337. The Materiality Provision does not include a safe harbor for non-material requirements that have some purported justification: it prohibits denial

10

of the right to vote based on any error or omission unless the error or omission materially bears on the voter's qualifications. *Cf. Schwier*, 412 F. Supp. 2d at 1276 (holding justification that requiring voters to disclose their social security numbers helped prevent against "fraud" did not render the requirement "material"); *Migliori v. Cohen*, 36 F.4th 153, 163 (3d Cir.) (finding "whatever sort of fraud deterrence or prevention this requirement may serve, it in no way helps [the state] determine" voters' qualifications), *cert. granted, judgment vacated as moot sub nom. Ritter v. Migliori*, 143 S. Ct. 297 (2022) (mem.);[3] *Wash. Ass'n of Churches v. Reed*, 492 F. Supp. 2d 1264, 1270 (W.D. Wash. 2006) (rejecting argument that information used for matching purposes could help prevent fraud rendered that information material).

Accordingly, the district court asked the wrong question when it considered the "stature" of a wet signature or the "solemn weight" that comes with "[p]hysically signing a voter registration form." App. 337 (quoting *Vote.org*, 39 F.4th at 308). The question is whether a requirement is *material* to *a voter's qualifications*, not whether it serves or is even material to some other state interest. *E.g.*, *Schwier*, 412 F. Supp. 2d at 1276. If an error or omission on a registration application is not "material to

---

[3] Although the U.S. Supreme Court vacated *Migliori* consistent with its practice in cases that become moot before a decision is issued, *see United States v. Munsingwear*, 340 U.S. 36, 39 (1950), there is nothing to suggest the Third Circuit's interpretation has changed. *See Real Alts., Inc. v. Sec'y Dep't of Health & Hum. Servs.*, 867 F.3d 338, 356 n.18 (3d Cir. 2017) (opinion vacated on non-merits grounds "sets forth the view of our Court").

determining the eligibility of the applicant," it cannot lawfully be the basis for rejecting or denying the application. *Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1175 (11th Cir. 2008) ("A more sound interpretation of § 1971(a)(2)(B) asks whether, accepting the error as true and correct, the information contained in the error is material to determining the eligibility of the applicant."); *see also Mi Familia Vota*, 2023 WL 8181307, at *14 ("[T]he Court infers that Congress intended materiality to require some probability of actually impacting an election official's eligibility determination.") (citing *La Unión del Pueblo Entero*, 604 F. Supp. 3d at 542).[4]

Here, asking the wrong question led to the wrong answer. The district court concluded that because a wet-ink signature purportedly "carries a solemn weight" that other types of signatures do not, it must be "material" for purposes of the Materiality Provision. App. 337. But the district court's belief in the "solemnity" of

---

[4] The logic of the Court's reasoning is further undermined by the fact that those Floridians who register to vote through the DMV may provide an electronic signature. Fla. Stat. § 97.053(5)(a)(8). There is no basis to conclude either that those voters are any less solemn about the attestation on their voter registration forms or that the State has an interest in the solemnity of some prospective voters but not others. In any event, even if the question were relevant to the Court's resolution of Plaintiffs' claim at all (and, as discussed, it is not), it was improper to make this finding on a motion to dismiss. *See Vote.org v. Ga. State Election Bd.*, 661 F. Supp. 3d 1329, 1341 (N.D. Ga. 2023) ("Even if Defendants can later prove that requiring applicants to sign in pen and ink . . . shows that the applicant has carefully considered his or her decision, it is improper to consider these arguments at this time because the Court's review on a motion to dismiss is limited to the pleadings.").

a wet-ink signature has no bearing on Plaintiffs' claim under the Materiality Provision. As a result, the district court's conclusion that Plaintiffs failed to "plausibly" allege "that the wet-signature requirement is immaterial," App. 338, is error and should be reversed.

## II.    Plaintiffs adequately pleaded standing.

As a threshold matter, the district court correctly determined that Plaintiffs alleged facts sufficient to confer jurisdiction over their claim for injunctive relief. App. 326; *see Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 52 n.2 (2006). Specifically, the district court properly found that Florida NAACP has standing based on a diversion of resources theory. Moreover, Plaintiffs' complaint established that Florida NAACP and the other Plaintiffs each have standing on independent grounds. Plaintiffs Vote.org and Disability Rights Florida ("DRF") both also have organizational standing due to diversion of resources, and Plaintiffs Florida NAACP, DRF, and Florida Alliance for Retired Americans ("Florida Alliance") have associational standing on behalf of their members because of the substantial risk that those members will be deterred or prevented from registering to vote due to the Wet Signature Requirement.

### A.    Florida NAACP, Vote.org, and DRF have organizational standing.

The district court properly found that allegations that the Wet Signature Requirement forces Florida NAACP to divert resources away from its other

13

activities to mitigate the effects of the challenged law were sufficient to establish the organization's standing at this stage. App. 327. "[O]rganizations can establish standing to challenge election laws by showing that they will have to divert personnel and time to educating potential voters on compliance with the laws and assisting voters who might be left off the registration rolls on Election Day." *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1341 (11th Cir. 2014). As this Court recently held, "broad allegation[s] of diversion of resources [are] enough at the pleading stage," *Ga. Ass'n of Latino Elected Offs.*, 36 F.4th at 1115.

Here, Florida NAACP alleged that, "[b]ecause of the Wet Signature Requirement, [it] must divert valuable resources to engage in additional door-to-door canvassing activities to ensure that potential voters who cannot register online and lack easy access to printers are registered." App. 043. These activities are "resource-intensive and require significant commitments from Florida NAACP and its members and volunteers—all resources that Florida NAACP could otherwise use to support [its] mission-critical activities," "such as programming and initiatives concerning educational inequities, the school-to-prison pipeline, and mass incarceration." App. 043.

Under this Circuit's precedent, this was more than sufficient. Indeed, as the district court found, Florida NAACP's allegations are "not appreciatively different" from those found sufficient for standing by this Court in *Georgia Association of*

14

*Latino Elected Officials*. App. 327 (quoting 36 F. 4th at 1115 ("general[] alleg[ations]" that organization "has diverted resources on an ongoing basis from [civic engagement, voter registration and get out the vote] activities" are "enough at the pleading stage")); *see also Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1350 (11th Cir. 2009) (Georgia NAACP "established an injury sufficient to confer standing" by "divert[ing] resources from its regular activities to educate voters about the [challenged] requirement"); *Browning*, 522 F.3d at 1166 (finding sufficient allegations that organizations diverted "personnel and time" from unspecified "registration drives and election-day education and monitoring"); *Ga. Latino All. for Hum. Rts. v. Gov. of Ga.*, 691 F.3d 1250, 1260 (11th Cir. 2012) (finding plaintiffs "satisfied . . . the minimum requirements of Article III" by "claim[ing] injuries analogous to those present in *Common Cause* and *Browning*"); *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) ("no question" that organization's "broadly alleged" impairment of activities "constitute[d] far more than simply a setback to the organization's abstract social interests") (citing *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972))).

Having found Florida NAACP's allegations of diversion of resources sufficient, the district court did not consider whether it or other Plaintiffs might have standing on independent grounds. App. 326. But the allegations in the complaint similarly established that Vote.org and DRF also have organizational standing based

on diversion of resources. Vote.org alleges that, "[b]ecause the Wet Signature Requirement prohibits the use of [the e-signature function of its web application], Vote.org must devote resources to alternative voter registration efforts in Florida that otherwise would be used for absentee ballot and GOTV projects in Florida and elsewhere." App. 040; *see also Vote.org*, 89 F.4th, at 471 (finding Vote.org's diversion of resources sufficient to establish standing at summary judgment stage). These allegations are sufficient at this stage under the precedent recited above.

DRF, meanwhile, has organizational standing under the Eleventh Circuit's "implicit[] recogni[tion]" of a Protection and Advocacy ("P&A") system's standing to redress injuries to itself. *Doe v. Stincer*, 175 F.3d 879, 883 (11th Cir. 1999) (citing *Ala. Disabilities Advoc. Program v. J.S. Tarwater Developmental Ctr.*, 97 F.3d 492 (11th Cir. 1996)). DRF is designated under 29 U.S.C. § 794e as Florida's P&A agency "to ensure full participation in the electoral process for individuals with disabilities." 52 U.S.C. § 21061(a)); *see also* App. 043–44. Specifically, DRF "ha[s] the authority to [] pursue legal, administrative, and other appropriate remedies . . . to ensure the protection of, and advocacy for, the rights of [disabled] individuals within the State." 42 U.S.C. § 15043(a)(2)(A)(i). Educating and assisting its constituents who have difficulty registering to vote because of the Wet Signature Requirement will force DRF to divert time, money, and resources away from its other activities. *See* App. 044–45 (alleging DRF's diversion of resources).

**B.      DRF, Florida Alliance, and Florida NAACP have associational standing.**

DRF, Florida Alliance, and Florida NAACP also each independently satisfy the three elements of associational standing: their members or constituents would have standing; the relevant interests are germane to organizations' purposes; and neither the claim nor the relief sought requires the participation of individual members or constituents. *Browning*, 522 F.3d at 1160.

*First*, Plaintiffs' members or constituents would have standing to sue in their own right. At this stage, "the rule in this Circuit is that organizational plaintiffs need only establish that 'at least one member faces a realistic danger' of suffering an injury." *Schalamar Creek Mobile Homeowner's Ass'n, Inc. v. Adler*, 855 F. App'x 546, 552 (11th Cir. 2021) (internal quotation marks omitted); *see also Browning*, 522 F.3d at 1163 (finding it "highly unlikely . . . that not a single member w[ould] have his or her application rejected" given plaintiffs claimed around 20,000 members statewide). That member does not need to be specifically identified. *See Stincer*, 175 F.3d at 884 ("[W]e have never held that a party suing as a representative must specifically name the individual on whose behalf the suit is brought[.]").

DRF represents millions of disabled Floridians, some of whom are not yet registered to vote and lack stable housing or easy access to transportation. App. 043–44. Although DRF does not have "members," "ha[ving] constituents rather than members does not deprive [an entity] of Article III standing." *Stincer*, 175 F.3d at

885 (citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 344 (1977)). Moreover, as a P&A agency, DRF "serves a specialized segment of the State[] . . . which is the primary beneficiary of its activities, including the prosecution of this kind of litigation." *Hunt*, 432 U.S. at 344; *see also* FAC ¶ 24 (citing 42 U.S.C. § 15043). And just like the P&A system in *Stincer*, DRF's constituents "possess the means to influence the priorities and activities [DRF] undertakes," 175 F.3d at 886, because the statutes governing DRF require that it (1) include "individuals with disabilities" who are eligible or have received "services through the system" or their families; (2) "establish an advisory council . . . on which a majority of the members shall be . . . individuals with disabilities" or their families; and (3) "establish a grievance procedure for clients or prospective clients of the system to ensure that individuals with disabilities are afforded equal opportunity to access the services of the system." 42 U.S.C. § 15044(a)(1)(B), (a)(5); 29 U.S.C. § 794e(f)(6); *see also* FAC ¶¶ 23-24. Accordingly, DRF "may sue on behalf of its constituents like a more traditional association may sue on behalf of its members." *Stincer*, 175 F.3d at 886; *see also Yelapi v. DeSantis*, 525 F. Supp. 3d 1371, 1377 n.4 (N.D. Fla. 2021) ("DRF has associational standing because its members have standing and this case is germane to DRF's purpose.").

Florida Alliance has tens of thousands of retired members, many of whom are elderly, struggle with mobility and manual dexterity, and may no longer drive or

have access to a printer. App. 041. And Florida NAACP has 12,000 members across the state. App. 041–42. For Plaintiffs' members and constituents who are not registered with the DMV and have difficulty obtaining, printing, signing, or returning a registration application, the Wet Signature Requirement makes it harder to register to vote and may deter or prevent these individuals from registering at all. *See* App. 041, 043, 045. These Plaintiffs face a substantial risk that at least one of their members will be deterred or prevented from registering to vote because of the Wet Signature Requirement, App. 041–45, which is more than sufficient to satisfy Article III at this stage. *See Arcia*, 772 F.3d 1335 at 1342; *Stincer*, 175 F.3d at 884; *cf. Common Cause/Ga.*, 554 F.3d at 1351-52 (observing that requiring a voter to provide photo identification to vote is a sufficient injury for standing, even if they are able to do so).

*Second*, the ability of Plaintiffs' members and constituents to register to vote is undeniably germane to the organizations' purposes. Federal law authorizes DRF to protect the rights of disabled Floridians, App. 043–44 (citing 29 U.S.C. § 794e), and DRF receives federal funding "to ensure full participation in the electoral process for individuals with disabilities, including registering to vote," App. 044 (quoting 52 U.S.C. § 21061(a)). Florida Alliance's mission is to "ensure social and economic justice and full civil rights that retirees have earned after a lifetime of work." App. 041. And Florida NAACP's mission is to "ensure the political, social,

educational, and economic equality of all persons," and it has spent decades heavily engaged in a variety of statewide voter registration efforts. App. 041–42; *see also Browning*, 522 F.3d at 1160 ("[T]he interests of voters in being able to register are clearly germane to [Florida NAACP's] purposes.").

*Third*, neither Plaintiffs' Materiality Provision claim nor the injunctive relief they request requires the participation of individual members in the lawsuit. *See Browning*, 522 F.3d at 1160 ("[W]hen the relief sought is injunctive, individual participation of the organization's members is not normally necessary." (internal quotation marks omitted)).

As a result, DRF, Florida Alliance, and Florida NAACP have satisfied the requirements for associational standing.

## CONCLUSION

The Court should reverse the district court's order dismissing Plaintiffs' claim and remand to the district court for further proceedings.

20

Dated: January 25, 2023

Respectfully submitted,

/s/ Frederick S. Wermuth
Frederick S. Wermuth
KING, BLACKWELL, ZEHNDER &
WERMUTH, P.A.
P.O. Box 1631
Orlando, FL 32802-1631
Telephone: (407) 422-2472
fwermuth@kbzwlaw.com

Abha Khanna*
ELIAS LAW GROUP LLP
1700 Seventh Ave., Suite 2100
Seattle, Washington 98101
Telephone: (206) 656-0177
akhanna@elias.law

Justin Baxenberg*
Alexander F. Atkins*
Renata O'Donnell*
ELIAS LAW GROUP LLP
250 Massachusetts Ave NW, Ste. 400
Washington, DC 20001
Telephone: (202) 968-4490
jbaxenberg@elias.law
aatkins@elias.law
rodonnell@elias.law

*Admitted Pro Hac Vice

Counsel to Plaintiffs-Appellants

**CERTIFICATE OF COMPLIANCE**

This response complies with the type-volume limitation of Rule 32(a)(7)(B) because it contains 4,789 words, excluding the parts that may be excluded. This response also complies with Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface, 14-point Times New Roman.

*/s/ Frederick S. Wermuth*

**CERTIFICATE OF SERVICE**

This brief has been filed by CM/ECF and served via CM/ECF on all counsel of record.

Dated: January 25, 2024

*/s/ Frederick S. Wermuth*