No. 23-13727

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

---

DISABILITY RIGHTS FLORIDA, et al.
*Plaintiffs-Appellants*,

v.

FLORIDA SECRETARY OF STATE, et al.
*Defendants-Appellees*,

and

REPUBLICAN NATIONAL COMMITTEE, et al.
*Intervenor-Defendants–Appellees*.

---

On Appeal from the United States District Court
for the Northern District of Florida
No. 4:23-cv-111 (Winsor, J.)

---

## Plaintiffs-Appellants' Reply Brief

---

Frederick S. Wermuth
KING, BLACKWELL, ZEHNDER &
WERMUTH, P.A.
P.O. Box 1631
Orlando, FL 32802-1631
Telephone: (407) 422-2472

Abha Khanna*
ELIAS LAW GROUP LLP
1700 Seventh Ave., Suite 2100
Seattle, Washington 98101
Telephone: (206) 656-0177

Justin Baxenberg*
Renata O'Donnell*
ELIAS LAW GROUP LLP
250 Massachusetts Ave NW, Ste. 400
Washington, DC 20001
Telephone: (202) 968-4490

*Admitted Pro Hac Vice*

*Counsel for Plaintiffs-Appellants*

*No. 23-13727, Disability Rights Fla. v. Fla. Sec'y of State*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1, Plaintiffs-Appellants certify that Vote.org, Florida State Conference of Branches and Youth Units of the NAACP, Disability Rights Florida, and Florida Alliance for Retired Americans each has no parent corporation, and no publicly held corporation owns 10% or more of any of those entities' stock.

Under Circuit Rule 26.1-1(a)(3) Plaintiffs-Appellants further certify that the following have an interest in the outcome of this case:

1.     Adkins, Janet, *Defendant*

2.     Andersen, Mark, *Defendant*

3.     Anderson, Chris, *Defendant*

4.     Anderson, Shirley, *Defendant*

5.     Arnold, Melissa, *Defendant*

6.     Arrington, Mary Jane, *Defendant*

7.     Baird, Maureen, *Defendant*

8.     Balsley Berlin, Holly, *Counsel for United States*

9.     Bardos, Andy, *Counsel for Defendants*

10.     Barton, Kim, *Defendant*

11.     Baxenberg, Justin, *Counsel for Plaintiffs*

12.     Beato, Michael, *Counsel for Defendant*

*No. 23-13727, Disability Rights Fla. v. Fla. Sec'y of State*

13. Benda, Kyle, *Counsel for Defendant*

14. Bender, Robert, *Defendant*

15. Bennett, Michael, *Defendant*

16. Bentley, Morgan, *Counsel for Defendant*

17. Blazier, Melissa, *Defendant*

18. Bledsoe, William, *Counsel for Defendant*

19. Bobanic, Tim, *Defendant*

20. Byrd, Cord, *Defendant*

21. Cannon, Starlet, *Defendant*

22. Chambless, Chris, *Defendant*

23. Chason, Sharon, *Defendant*

24. Conyers, Grant, *Defendant*

25. Corley, Brian, *Defendant*

26. Davis, Ashley, *Counsel for Defendant*

27. Davis, Vicky, *Defendant*

28. Dickey, Gilbert, *Counsel for Intervenor-Defendant*

29. Disability Rights Florida, *Plaintiff*

30. Doyle, Tommy, *Defendant*

31. Driggers, Heath, *Defendant*

32. Dunaway, Carol, *Defendant*

*No. 23-13727, Disability Rights Fla. v. Fla. Sec'y of State*

33.  Earley, Mark, *Defendant*

34.  Edwards, Jennifer, *Defendant*

35.  Edwards, Lori, *Defendant*

36.  Erdelyi, Susan, *Counsel for Defendants*

37.  Farnam, Aletris, *Defendant*

38.  Feiser, Craig, *Counsel for Defendant*

39.  Florida Alliance for Retired Americans, *Plaintiff*

40.  Florida State Conference of Branches and Youth Units of the NAACP, *Plaintiff*

41.  Gibson, Benjamin, *Counsel for Intervenor-Defendants*

42.  Gilzean, Glenton, *Defendant*

43.  Glickman, Jessica, *Counsel for Defendant*

44.  Graham, William, *Counsel for Defendant*

45.  Green, Tyler, *Counsel for Intervenor-Defendants*

46.  Griffin, Joyce, *Defendant*

47.  Guzzo, Sophia, *Counsel for Defendant*

48.  Hankins, Christi, *Counsel for Defendant*

49.  Hanlon, John, *Defendant*

50.  Hart, Travis, *Defendant*

51.  Hays, Alan, *Defendant*

*No. 23-13727, Disability Rights Fla. v. Fla. Sec'y of State*

52. Healy, Karen, *Defendant*

53. Herron, Mark, *Counsel for Defendant*

54. Holland, Jerry, *Defendant*

55. Hutto, Laura, *Defendant*

56. Jarone, Joseph, *Counsel for Defendant*

57. Jazil, Mohammad, *Counsel for Defendant*

58. Johnson, Diana, *Counsel for Defendant*

59. Jonas, Sarah, *Counsel for Defendant*

60. Jones, Tammy, *Defendant*

61. Jouben, Jon, *Counsel for Defendant*

62. Keen, William, *Defendant*

63. Khanna, Abha, *Counsel for Plaintiffs*

64. Kinsey, Jennifer, *Defendant*

65. Klitsberg, Nathaniel, *Counsel for Defendant*

66. Knight, Shirley, *Defendant*

67. Latimer, Craig, *Defendant*

68. LaVia, John, III, *Counsel for Defendants*

69. Lenhart, Kaiti, *Defendant*

70. Lewis, Lisa, *Defendant*

71. Link, Wendy, *Defendant*

*No. 23-13727, Disability Rights Fla. v. Fla. Sec'y of State*

72. Lux, Paul, *Defendant*

73. Marcus, Julie, *Defendant*

74. Mari, Frank, *Counsel for Defendants*

75. Markarian, David, *Counsel for Defendant*

76. McCarthy, Thomas, *Counsel for Intervenor-Defendants*

77. Meros, Nicholas, *Counsel for Defendant*

78. Messer, Ryan, *Defendant*

79. Milligan, Michelle, *Defendant*

80. Milton, Christopher, *Defendant*

81. Morgan, Joseph, *Defendant*

82. Negley, Mark, *Defendant*

83. Nordby, Daniel, *Counsel for Intervenor-Defendants*

84. Norris, Cameron, *Counsel for Intervenor-Defendants*

85. O'Donnell, Renata, *Counsel for Plaintiffs*

86. Oakes, Vicky, *Defendant*

87. Olivo, Geraldo, III, *Counsel for Defendant*

88. Osborne, Deborah, *Defendant*

89. Overturf, Charles, *Defendant*

90. Perez, Devona Reynolds, *Counsel for Defendant*

91. Republican National Committee, *Intervenor-Defendant*

92.    Republican Party of Pasco County, *Intervenor-Defendant*

93.    Riley, Heather, *Defendant*

94.    Ritter, Quinn, *Counsel for Plaintiffs*

95.    Rudd, Carol, *Defendant*

96.    Sanchez, Connie, *Defendant*

97.    Scott, Dale, *Counsel for Defendant*

98.    Scott, Joe, *Defendant*

99.    Seyfang, Amanda, *Defendant*

100.    Shannin, Nicholas, *Counsel for Defendant*

101.    Shaud, Matthew, *Counsel for Defendant*

102.    Smith, Diane, *Defendant*

103.    Southerland, Dana, *Defendant*

104.    Stewart, Gregory, *Counsel for Defendant*

105.    Stinton Brown, Tomi, *Defendant*

106.    Swain, Robert, *Counsel for Defendant*

107.    Swan, Leslie, *Defendant*

108.    Taylor, Sherry, *Defendant*

109.    Todd, Stephen, *Counsel for Defendant*

110.    Turner, Ron, *Defendant*

111.    United States of America, *Interested Party*

*No. 23-13727, Disability Rights Fla. v. Fla. Sec'y of State*

112.  Valdes, Michael, *Counsel for Defendant*

113.  Valenti, Leah, *Defendant*

114.  Van De Bogart, Joseph, *Counsel for Defendant*

115.  Vicari, Kelly, *Counsel for Defendant*

116.  Villane, Tappie, *Defendant*

117.  Vote.org, *Plaintiff*

118.  Walker, Gertrude, *Defendant*

119.  Wermuth, Frederick, *Counsel for Plaintiffs*

120.  White, Christina, *Defendant*

121.  Wilcox, Wesley, *Defendant*

122.  Williams, Russell, *Defendant*

123.  Winsor, Allen C., *U.S. District Court Judge*

124.  Woodfin, Conor, *Counsel for Intervenor-Defendants*

/s/ *Frederick S. Wermuth*

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................1

ARGUMENT ........................................................................................3

I.   The Wet Signature Requirement denies the right to vote within the meaning of the Materiality Provision. ...............................................3

II.  The Materiality Provision applies to state law requirements. .........................6

III. The method of signing a voter registration application is not material in determining voter qualifications. .....................................................9

    A. The Materiality Provision limits states' ability to impose technical requirements. ..........................................................................10

    B. State interests are not material in determining voter qualifications. ........11

    C. The Wet Signature Requirement does not prove a voter's identity. ........14

    D. The Wet Signature Requirement is not *per se* material under federal law. ...................................................................................15

IV. Plaintiffs have standing to bring this action. ...................................16

    A. Plaintiffs have sufficiently alleged organizational standing. ..................16

    B. Plaintiffs have sufficiently alleged associational standing.....................19

    C. Plaintiffs are appropriate parties to challenge the Wet Signature Requirement under the Materiality Provision and Section 1983. ...........21

    D. Private plaintiffs can enforce the Materiality Provision under Section 1983. ..........................................................................24

CONCLUSION....................................................................................26

CERTIFICATE OF SERVICE ................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Coll. of Emergency Physicians v. Blue Cross & Blue Shield of
  Ga.*,
  833 F. App'x 235 (11th Cir. 2020) ....................................................20

*Anderson v. Celebrezze*,
  460 U.S. 780 (1983) .........................................................................11

*Burdick v. Takushi*,
  504 U.S. 428 (1992) .........................................................................11

*City of Rancho Palos Verdes v. Abrams*,
  544 U.S. 113 (2005) ...................................................................25, 26

*City of S. Miami v. Governor*,
  65 F.4th 631 (11th Cir. 2023) ..........................................................19

*Common Cause/Ga. v. Billups*,
  554 F.3d 1340 (11th Cir. 2009) ..................................................17, 19

*Crawford v. Marion Cnty. Election Bd.*,
  553 U.S. 181 (2008) ...........................................................................5

*Democratic Exec. Comm. of Fla. v. Lee*,
  915 F.3d 1312 (11th Cir. 2019) ..........................................................5

*Diaz v. Cobb*,
  435 F. Supp. 2d 1206 (S.D. Fla. 2006) .............................................11

*Doe v. Stincer*,
  175 F.3d 879 (11th Cir. 1999) ....................................................20, 21

*FEC v. Akins*,
  524 U.S. 11 (1998) ...........................................................................22

*Fla. State Conf. of NAACP v. Browning*,
  522 F.3d 1153 (11th Cir. 2008) .................................8, 9, 16, 17, 20

*Ga. Ass'n of Latino Elected Officials v. Gwinnett Cnty. Bd. of Registration & Elections*,
36 F.4th 1100 (11th Cir. 2022) ....................................................17, 18

*Ga. Latino All. for Human Rights v. Gov'r of Ga.*,
691 F.3d 1250 (11th Cir. 2012) ...........................................................19

*Ga. Republican Party v. SEC*,
888 F.3d 1198 (11th Cir. 2018) ....................................................18, 19

*Gonzaga Univ. v. Doe*,
536 U.S. 273 (2002)..............................................................................23

*Health & Hosp. Corp. of Marion Cnty. v. Talevski*,
599 U.S. 166 (2023)........................................................................24, 25

*Hunt v. Wash. State Apple Advert. Comm'n*,
432 U.S. 333 (1977)..............................................................................21

*La Unión del Pueblo Entero v. Abbott*,
No. 5:21-CV-0844, 2023 WL 8263348 (W.D. Tex. Nov. 29, 2023),
*stay pending appeal granted sub nom. United States v. Paxton*, No.
23-50885 (5th Cir. Dec. 15, 2023)........................................4, 5, 6, 7, 11

*Lexmark Int'l, Inc. v. Static Control Components*,
572 U.S. 118 (2014)..............................................................................22

*Mays v. LaRose*,
951 F.3d 775 (6th Cir. 2020) .................................................................5

*Mi Familia Vota v. Fontes*,
No. 2:22-cv-00509, 2023 WL 8183070 (D. Ariz. Feb. 16, 2023)...................4, 5

*NAACP v. City of Kyle*,
626 F.3d 233 (5th Cir. 2010) ...............................................................19

*Newton v. Duke Energy Fla., LLC*,
895 F.3d 1270 (11th Cir. 2018) ...........................................................14

*Pa. State Conf. of NAACP Branches v. Sec'y Commonwealth of Pa.*,
97 F.4th 120 (3d Cir. 2024) ............................................................8, 12

*Powers v. Ohio*,
499 U.S. 411 (1991)....................................................................24

*Schalamar Creek Mobile Homeowner's Ass'n, Inc. v. Adler*,
855 F. App'x 546 (11th Cir. 2021) ...............................................20

*Schwier v. Cox*,
340 F.3d 1284 (11th Cir. 2003) ..............................................23, 24

*Schwier v. Cox*,
412 F. Supp. 2d 1266 (N.D. Ga. 2005)........................................3, 12

*Sixth Dist. of Afr. Methodist Episcopal Church v. Kemp*,
574 F. Supp. 3d 1260 (N.D. Ga. 2021)..........................................4, 5

*Stringer v. Hughs*,
Nos. 5:20-cv-46, 5:16-cv-257, 2020 WL 6875182 (W.D. Tex. Aug.
28, 2020) .....................................................................................15

*Trafficante v. Metro. Life Ins. Co.*,
409 U.S. 205 (1972)....................................................................22

*United States v. Mississippi*,
380 U.S. 128 (1965)......................................................................7

*Vote.org v. Callanen*,
39 F.4th 297 (5th Cir. 2022) .....................................................5, 8

*Vote.org v. Callanen*,
89 F.4th 459 (5th Cir. 2023) ..................................4, 5, 8, 9, 10, 14

*Vote.org v. Ga. State Election Bd.*,
661 F. Supp. 3d 1331 (N.D. Ga. 2023)............................................7

*Yelapi v. DeSantis*,
525 F. Supp. 3d 1371 (N.D. Fla. 2021) ..........................................21

**Statutes**

29 U.S.C. § 794e(f)(6) ................................................................21

42 U.S.C. § 1983 ................................................................3, 16, 23

42 U.S.C. § 15043(a)(2)(A)(i) ......................................................24

42 U.S.C. § 15044(a)(1)(B) ......................................................................21

42 U.S.C. § 15044(a)(5) ...........................................................................21

52 U.S.C. § 10101(a)(1) .............................................................................7

52 U.S.C. § 10101(a)(2) .............................................................................6

52 U.S.C. § 10101(a)(2)(B) ...............................................................1, 3, 9

52 U.S.C. § 10101(a)(2)(C) .......................................................................7

52 U.S.C. § 10101(a)(3)(A) .......................................................................3

52 U.S.C. § 10101(d) ...............................................................................22

52 U.S.C. § 10101(e) .........................................................................3, 25

52 U.S.C. § 20508(b)(2) ...........................................................................15

52 U.S.C. § 21061(a) ...............................................................................24

Fla. Stat. § 97.041 ...................................................................................10

Fla. Stat. § 97.051 ...................................................................................13

## INTRODUCTION

Congress enacted the Materiality Provision to protect voters from state-imposed barriers to the ballot box unrelated to the voter's qualifications. The Materiality Provision thus prevents rejection of voter registration forms due to "errors or omissions . . . not material in determining whether [an] individual is qualified under State law to vote." 52 U.S.C. § 10101(a)(2)(B). Secretary of State Cord Byrd and the ten Supervisors of Elections who joined his brief ("State Defendants") and Intervenors the Republican National Committee and the Republican Party of Pasco County ("Intervenor-Defendants") ignore the plain language of the Provision, instead claiming that Florida's Wet Signature Requirement is justified for reasons having nothing to do with voter qualifications. But the only relevant question under the Materiality Provision is both limited and simple: is the requirement *material* in determining voter qualifications? Plaintiffs' Complaint adequately pleads that the manner in which a prospective voter signs their registration form plays no role in determining whether they possess the qualifications required to vote in Florida. That is sufficient to survive Defendants' motions to dismiss, and the district court's decision to the contrary should be reversed.

Although the district court granted the motions to dismiss solely on the basis that a wet signature is justified by a purported state interest in solemnity, App. 337,

1

on appeal Defendants raise various additional arguments, but none provide an alternative basis to affirm the district court. First, Defendants argue that the Wet Signature Requirement does not deny the right to vote because applicants may be able to cure their registration applications. But under the Materiality Provision, rejecting a registration application definitionally *is* denying the right to vote. Next, State Defendants argue that the Wet Signature Requirement is *per se* material because federal law requires signatures on voter applications, but this argument fails because the issue in this case is whether the *method* of signing is material—not whether a state can require an application to be signed at all. Intervenor-Defendants go one step farther, arguing that *any* requirement imposed by state law is *per se* permissible, and that the Materiality Provision only applies to ad hoc actions by officials that go beyond the requirements of state law. That is an implausible reading of the statute, which clearly prohibits the enforcement of state laws requiring compliance with technicalities unrelated to voter qualifications. Finally, State Defendants' challenge to Plaintiffs' standing fails because it relies almost entirely on caselaw addressing the failure to provide *proof* necessary only at later stages of

2

litigation; here, each Plaintiff has exceeded the requirements for establishing standing at the pleading stage.[1]

The district court's order dismissing Plaintiffs' claim should be reversed, and this matter should be remanded for additional proceedings.

## ARGUMENT

### I.    The Wet Signature Requirement denies the right to vote within the meaning of the Materiality Provision.

Defendants' arguments that the Wet Signature Requirement does not deny the right to vote fail because they ignore the plain text of the statute. The Materiality Provision defines "vote" broadly, to include "all action necessary to make a vote effective *including, but not limited to, registration*[.]" 52 U.S.C. § 10101(a)(3)(A), (e) (emphasis added). Rejecting the registration application of an otherwise qualified voter therefore is a denial of the right to vote as defined by the Materiality Provision. *See id.* § 10101(a)(2)(B); *Schwier v. Cox*, 412 F. Supp. 2d 1266, 1276 (N.D. Ga. 2005) (holding defendant violated Materiality Provision by "denying plaintiffs the right to register to vote").

_____

[1] State Defendants also argue that the Materiality Provision cannot be enforced through a private action under 42 U.S.C. § 1983 but acknowledge that this Court has held otherwise. *See* State Br. 50 n.11, Doc. 73.

3

Rather than confront the statutory definition of "vote," Defendants proceed on the assumption that the right to vote is denied only where the individual is ultimately unable to cast a vote. Defendants primarily argue that the Wet Signature Requirement does not deny the right to vote because Florida allows applicants to cure signature deficiencies on voter registration applications. *See* Intervenors Br. 31-33, Doc. 74; State Br. 22. But "an opportunity to cure the rejection [or] submit another application . . . does not negate the denial of the statutory right to vote." *La Unión del Pueblo Entero v. Abbott*, No. 5:21-CV-0844, 2023 WL 8263348, at *22 (W.D. Tex. Nov. 29, 2023) *("LUPE")* (collecting cases), *stay pending appeal granted sub nom. United States v. Paxton*, No. 23-50885 (5th Cir. Dec. 15, 2023); *Mi Familia Vota v. Fontes*, No. 2:22-cv-00509, 2023 WL 8183070, at *18 n.17 (D. Ariz. Feb. 16, 2023) ("cure provision . . . does not warrant dismissing [] § 10101 claim"); *Sixth Dist. of Afr. Methodist Episcopal Church v. Kemp*, 574 F. Supp. 3d 1260, 1282 (N.D. Ga. 2021) (rejecting argument at motion to dismiss stage that "opportunity to cure an error rehabilitates any potential violation" of Materiality Provision); *see also Vote.org v. Callanen*, 89 F.4th 459, 487 (5th Cir. 2023) *("Callanen II")* (setting aside motions panel determination "that because the absence of an original signature on the initial application still allows registration through alternative means, the requirement was not a denial of the right to vote"). If offering notice and cure were enough for a state to overcome a Materiality Provision

claim, states could serially deny registrations for immaterial reasons so long as they offered voters an opportunity to try again. That is not the law. *See LUPE*, 2023 WL 8263348, at *22; *Mi Familia Vota*, 2023 WL 8183070, at *18 n.17; *Sixth Dist. of Afr. Methodist Episcopal Church*, 574 F. Supp. 3d at 1282; *cf. Callanen II*, 89 F.4th at 487 ("Our doubt about the efficacy of an *ability* to cure is that the *need* to cure an immaterial requirement creates a hurdle for—even if it is not itself a final denial of— the right to vote.").

State Defendants also argue that there is no Materiality Provision violation because the burden of complying with the Wet Signature Requirement is "minimal." State Br. 21. But the cases they cite analyze *constitutional* claims, which courts evaluate by weighing voter burdens against state interests, *see, e.g.*, *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1318 (11th Cir. 2019) (explaining *Anderson-Burdick* balancing test). *See* State Br. 21; *see also Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 187 (2008) ("The complaints in the consolidated cases allege that the new law substantially burdens the right to vote in violation of the Fourteenth Amendment"); *Mays v. LaRose*, 951 F.3d 775, 791-92 (6th Cir. 2020) (recognizing plaintiffs alleged violations of First and Fourteenth Amendments); *Vote.org v. Callanen*, 39 F.4th 297 (5th Cir. 2022) *("Callanen I")* (discussing "constitutional claim under the First and Fourteenth Amendments"). As even Intervenor-Defendants acknowledge, the Materiality Provision "is not a

5

constitutional claim necessitating the application of a balancing test." Intervenors Br. 22 (citing *Callanen II*, 89 F.4th at 480). Instead, Materiality Provision violations are prohibited regardless of the "burden-interest" balance, *LUPE*, 2023 WL 8263348, at *8, and thus "[t]he magnitude of [a challenged law's] impact is simply not relevant to the question" of whether the relevant error or omission is "immaterial to [voters'] eligibility," *id.* at *9.

In short, the law provides no carveout to immunize Florida's Wet Signature Requirement from liability under the Materiality Provision. Restrictions on voter registration *are* restrictions on the right to vote under the statute, no matter how burdensome on voters, and the possibility of voters overcoming those restrictions is irrelevant to the analysis.

## II.    The Materiality Provision applies to state law requirements.

Intervenor-Defendants' argument that any information required by state law cannot implicate the Materiality Provision, Intervenors Br. 22-31, is also without merit. According to this theory, the Wet Signature Requirement is material because the State says it is, and a Materiality Provision violation can occur only if some official attempts to go "beyond state law." *Id.* at 23. This interpretation would cripple the Materiality Provision, which plainly applies to *any* state-instituted requirements unrelated to voter qualifications regardless of whether or how they are codified. 52 U.S.C. § 10101(a)(2)(B).

6

This is evident from the text of the statute itself. Subsection (a)(1) of the Civil Rights Act guarantees the right of citizens "who are otherwise qualified by law to vote" to exercise that right "notwithstanding" "*any constitution, law*, custom, usage, or regulation of any State or Territory." 52 U.S.C. § 10101(a)(1); *see also United States v. Mississippi*, 380 U.S. 128, 137-38 (1965) (rejecting contention that the statute bars challenges to "the validity of [a] State's voting laws"); *id.* at 138 (noting the statute "was passed by Congress under the authority of the Fifteenth Amendment to enforce that Amendment's guarantee, which protects against any discrimination by a State, its laws, its customs, or its officials in any way"). The section immediately following the Materiality Provision, moreover, prohibits "any literacy test as a qualification for voting" but provides that the Attorney General may nonetheless "enter into agreements with appropriate State or local authorities" to allow such tests where they are necessary for specific reasons "in accordance with the provisions of applicable State or local law[.]" 52 U.S.C. § 10101(a)(2)(C). There would be no need for such a carveout if state laws were immune from scrutiny under the statute.

In keeping with the statutory text, courts routinely and properly have held that requirements imposed by state law can violate the Materiality Provision. *See, e.g.*, *Vote.org v. Ga. State Election Bd.*, 661 F. Supp. 3d 1331, 1340-41 (N.D. Ga. 2023) (denying motion to dismiss Materiality Provision challenge to Georgia state law concerning wet signature requirement); *LUPE*, 2023 WL 8263348, at *25-28

7

(holding plaintiffs were entitled to permanent injunction barring enforcement of Texas election laws requiring mail voters to provide identification number); *see also Callanen I*, 39 F.4th at 305-06 (evaluating state law under Materiality Provision); *Callanen II*, 89 F.4th at 487 (same); *Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1173 (11th Cir. 2008) (same). Intervenor-Defendants have not cited a single case to support their novel claim that state laws are beyond the reach of Materiality Provision claims.

The statutory text and uniform precedent thus speak as one, and for good reason. In enacting the Materiality Provision, "Congress clearly understood that it was acting in an area normally reserved to the States and did so because of the extraordinary need to protect the franchise." *Pa. State Conf. of NAACP Branches v. Sec'y Commonwealth of Pa.*, 97 F.4th 120, 149 n.19 (3d Cir. 2024) (Shwartz, J., dissenting). If the Materiality Provision did not govern state laws and regulations, states could freely codify and implement all manner of meaningless technical requirements and then use them to reject applications.

Intervenor-Defendants' foray into historical practice only confirms that the Materiality Provision cannot reasonably be limited to ad hoc executive actions. Intervenor-Defendants recognize that the Materiality Provision was intended to combat practices such as "forc[ing] applicants to calculate their age in exact number of days" and otherwise "inducing voter-generated errors that could be used to justify

rejecting applicants." Intervenors Br. 28-29. But under their theory of the Materiality Provision, it would be perfectly acceptable for a State to inflict such practices upon voters so long as it enshrined them in state law. Congress could not have intended for the Materiality Provision to be so easily circumvented. *See Callanen II*, 89 F.4th at 487 (States cannot "circumvent the Materiality Provision by defining all manner of requirements, no matter how trivial, as being a qualification to vote and therefore 'material'").

### III. The method of signing a voter registration application is not material in determining voter qualifications.

No Defendant has argued that the method by which an applicant signs a voter registration application is used to determine the applicant's substantive qualifications to vote. Instead, Defendants proffer various interests that the State might have in requiring a particular form of signature. These arguments miss the point. The Materiality Provision prohibits rejecting a voter registration application because of an error or omission on the application that is not "material in determining whether [the applicant] is qualified under State law to vote." 52 U.S.C. § 10101(a)(2)(B). As this Court has clarified, the only question under the Materiality Provision is "whether, accepting the error as *true and correct*, the information contained in the error is material to determining the eligibility of the applicant." *Browning*, 522 F.3d at 1175.

9

Here, the relevant error or omission is the use of an electronic, stamped, facsimile, or other non-wet signature rather than a wet signature. The question before the Court is therefore whether Plaintiffs have adequately alleged that the wetness of the signature is immaterial to determining whether the applicant meets the substantive age, citizenship, residency, and competency qualifications to vote. Fla. Stat. § 97.041. They have, and nothing in the Defendants' briefs or the district court's opinion establishes otherwise.

### A. The Materiality Provision limits states' ability to impose technical requirements.

State Defendants contend that because Plaintiffs do not contest that *signatures* are material, it necessarily follows that *wet signatures* are material, either because "[i]t is impossible to separate an original signature from the requirement for a signature," State Br. 14, or because the Materiality Provision does not limit "the form used to obtain material information," *id.* at 16–17. State Defendants barely try to explain the first proposition, which relies almost entirely on a now-superseded stay panel decision. *See Callanen II*, 89 F.4th at 469. It is in fact easy to separate the method of satisfying a requirement from the requirement itself. An applicant's age undeniably is material to determining their qualifications, but (as State Defendants acknowledge) a State cannot require an applicant "to calculate the number of days and months in a voter's age." State Br. 20. The same principle holds here. The State may be able to require a voter to sign their application to attest to their qualifications,

10

but that does not necessarily mean that the State can require the voter to sign their application in a particular way.

Contrary to Defendants' catastrophizing, this does not mean that states cannot impose *any* procedural requirements or that they are "forced to accept all sorts of deviations from standard registration procedures." Intervenors Br. 30. For example, a State might reject a form on which material information is illegible or unintelligible, such as an "address in the form of a hand-scrawled map," *id.*, and may solicit material information such as citizenship status, *see Diaz v. Cobb*, 435 F. Supp. 2d 1206, 1211-14 (S.D. Fla. 2006). But where the information required on a form is immaterial to determining voter qualifications—such as here—an application cannot be rejected due to failure to comply.

## B. State interests are not material in determining voter qualifications.

Defendants assert various potential State interests in the Wet Signature Requirement, Intervenors Br. 16, but a state's interests in enforcing a challenged law are "entirely irrelevant" to a Materiality Provision claim. *LUPE*, 2023 WL 8263348, at *8 ("[T]he Materiality Provision is not a burden-interest balancing statute. Materiality Provision violations are prohibited no matter their policy aim."). As set forth above, this is not a constitutional challenge in which the court balances burdens against state interests. *See Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983); *Burdick v. Takushi*, 504 U.S. 428, 434 (1992). Even if the State had valid reasons

11

for preferring a wet signature in certain circumstances, the Materiality Provision prohibits rejection of voter registration applications for reasons that are irrelevant to determining a voter's qualifications. *Cf. Schwier*, 412 F. Supp. 2d at 1276 (holding preventing "fraud" did not render mandatory disclosure of social security number "material").

Intervenor-Defendants attempt to shoehorn state interests into the Materiality Provision analysis by asserting that the phrase "material in determining whether such individual is qualified under State law to vote" encompasses all factors that are in any way relevant to the process of evaluating voter qualifications, and that "[r]egistration requirements must be material 'in' that process, not 'to' a given qualification." *See* Intervenors Br. 16. But no court has divorced voter registration requirements from voter qualifications in the manner Intervenor-Defendants suggest, and this Court should reject Intervenor-Defendants' invitation to be the first.[2]

_____

[2] Intervenor-Defendants suggest that the Third Circuit's recent decision in *Pennsylvania State Conference of NAACP* , 97 F.4th at 127, supports their interpretation. Intervenors Br. 20. That case, however, relied on the "in determining" language only for purposes of concluding that the Materiality Provision did not apply to *vote-casting* rules, and did not assert that "materiality" applied to the entire registration process. *See* 97 F.4th at 131 (holding "the information containing an error or omission, material or not, must itself relate to ascertaining a person's qualification to vote").

12

Even if state interests did play a role in a Materiality Provision analysis, Defendants offer no meaningful support for their assertion that the Wet Signature Requirement advances the state interests they identify. Intervenor-Defendants summarily claim that wet signatures "help deter and detect fraud, increase public confidence in the election, and imprint a solemn weight to the process that electronic signatures do not." Intervenors Br. 16. But they never explain why, instead quoting *Callanen II* for the proposition that these state interests are substantial as a matter of law. Intervenors Br. 22. The court in *Callanen II*, however, did not say that those interests justified the challenged requirement as a matter of law; it still required some connection between the asserted state interest and the challenged requirement—a connection that Defendants cannot establish through sheer *ipse dixit*.

Even if Defendants had drawn the connection between a wet signature and voter "solemnity," that purported interest fails to account for the millions of Floridians who sign their voter registration applications electronically at the DMV. All Florida applicants sign the same, solemn oath, regardless of whether they sign their application with a pen, a stylus, or an imaged signature. *See* Fla. Stat. § 97.051 ("A person registering to vote must subscribe to the [] oath"). Defendants offer no reason why state law would demand an extra showing of "solemnity" only from certain voters and not others. In this way, this case is unlike *Callanen II*, where the Court considered the difference between signing applications with printed warnings

13

and signing with a stylus without seeing those warnings. *See Callanen II*, 89 F.4th at 488-89 (distinguishing between application forms with "printed warnings" and those without).

In short, Defendants fail to explain how any of the purported state interests are served by a law that requires some—but not all—Floridians to sign their voter registration forms in wet ink.

**C.    The Wet Signature Requirement does not prove a voter's identity.**

Intervenor-Defendants argue that the wetness of a signature is material because it proves the voter's identity and that the voter is a real person. Intervenors Br. 11-16. But there is no requirement that the state match original signatures to confirm identities during the registration process, and Intervenor-Defendants seemingly admit that the State does not engage in any such process. *Id.* at 15. The extent to which State officials match signatures on voter registration forms to verify identity is, moreover, a question of fact that cannot be resolved at the motion to dismiss stage. Instead, the Court must draw the inference in favor of Plaintiffs that election officials do not use wet signatures to verify a voter's identity. *See Newton v. Duke Energy Fla., LLC*, 895 F.3d 1270, 1275 (11th Cir. 2018). The Court therefore has no basis to hold that identity verification saves the wet signature requirement from this challenge.

14

### D.    The Wet Signature Requirement is not *per se* material under federal law.

State Defendants argue that the Wet Signature Requirement is *per se* material based on the National Voter Registration Act (NVRA) and this Court's holding in *Browning*. State Br. 23-25. This argument withers under scrutiny. The NVRA requires that a mail voter registration form be signed by the applicant under penalty of perjury. 52 U.S.C. § 20508(b)(2). But the NVRA does not require a *wet* signature or mandate that a voter sign this form in any specific manner. *See Stringer v. Hughs*, Nos. 5:20-cv-46, 5:16-cv-257, 2020 WL 6875182, at \*24 (W.D. Tex. Aug. 28, 2020) (holding that NVRA does not "define[] or limit[] the type of signature that is required for voter registration" and rejecting argument that NVRA requires "a physical ink or wet signature written on paper by hand"). Moreover, State Defendants routinely accept electronic signatures from applicants who register at the DMV or online. State Br. 16; Intervenors Br. 2-3. If federal law required a wet signature (it does not), State Defendants would be out of compliance for the vast majority of voter registration forms they accept.

Nonetheless, State Defendants use the NVRA as a springboard to argue that under *Browning*, wet signatures must be material. *See* State Br. 23. But State Defendants misapply *Browning*. In *Browning*, this Court held that requiring certain forms of identification to register to vote did not violate the Materiality Provision for one very important reason: Congress requires the exact same forms of

15

identification information under the Help America Vote Act (HAVA). 522 F.3d at 1174-75. State Defendants try to draw a straight line from *Browning* to this case, arguing that Florida's Wet Signature Requirement is *per se* material because it mirrors the NVRA signature requirement. But State Defendants ignore a glaring difference between federal law and state law: the NVRA does not require *wet* signatures, while the Wet Signature Requirement does. As such, the NVRA does not require *identical* information to the challenged state law in the way that HAVA required *identical* information to the challenged state law. Therefore, *Browning* is not applicable.

## IV.    Plaintiffs have standing to bring this action.

As explained at length in Appellants' opening brief, each Plaintiff has adequately alleged organizational standing, associational standing, or both. Opening Br. 13-20, Doc. 43. State Defendants attempt to attack Plaintiffs' standing through a combination of rewriting the applicable standards and rewriting the Amended Complaint itself. These efforts should fail. The Materiality Provision furthermore is clearly enforceable through a private action under 42 U.S.C. § 1983, as confirmed by this Court and consistent with recent U.S. Supreme Court precedent.

### A.    Plaintiffs have sufficiently alleged organizational standing.

The district court properly found that allegations that the Wet Signature Requirement forces Florida NAACP to divert resources away from its other

16

activities to mitigate the effects of the Wet Signature Requirement were sufficient to establish the organization's standing at this stage. App. 327. State Defendants argue that Florida NAACP's allegation that it has "divert[ed] time, money, and resources away from other activities, such as programming and initiatives concerning educational inequities, the school-to-prison pipeline, and mass incarceration" somehow "does not 'explain where it would have to divert resources away *from*." App. 43; State Br. 37. Simply reading the allegation refutes that argument.

But in case there were any doubt, State Defendants helpfully quote several cases in which this Court has found standing under a diversion of resources theory based on virtually indistinguishable allegations. *See, e.g.*, *Ga. Ass'n of Latino Elected Officials v. Gwinnett Cnty. Bd. of Registration & Elections*, 36 F.4th 1100, 1115 (11th Cir. 2022) *("GALEO")* (finding standing where plaintiffs alleged organizations diverted resources away from "civic engagement, voter registration and get out the vote work"); *Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1350 (11th Cir. 2009) (finding standing where plaintiffs alleged diversion from "transporting voters to the polls"); *Browning*, 522 F.3d at 1166 (finding standing where plaintiffs alleged diversion from "registration drives and election-day education"). Florida NAACP's allegations here are no less specific than the allegations in *GALEO*, *Common Cause/Georgia*, and *Browning*, and similarly suffice to allege diversion of resources. *See* App. 44-45 (DRF alleging it must "divert

17

time, money, and resources" away from "advocating to make polling sites and ballots more accessible" and "demanding access and accountability for disabled individuals in health care" and other industries); App. 40 (Vote.org alleging it must divert resources away from "absentee ballot and GOTV projects in Florida and elsewhere"). These allegations plainly suffice to establish standing given that "broad allegation of diversion of resources is enough at the pleading stage." *GALEO*, 36 F.4th at 1115.

State Defendants also argue that Plaintiffs do not allege that any diversion "'impair[s] [Plaintiffs'] mission[s]," State Br. 37; *id.* at 35-43, because Plaintiffs allege that they have or will divert resources towards activities broadly consistent with their missions, such as voter registration. But this is not the test for organizational standing. The test is whether "defendant's illegal acts impair[ed] [Plaintiffs'] ability to engage in [their] projects by forcing the organization to divert resources to counteract those illegal acts." *Ga. Republican Party v. SEC*, 888 F.3d 1198, 1203 (11th Cir. 2018) (quoting *Ga. Latino All. for Human Rights v. Gov'r of Ga.*, 691 F.3d 1250, 1259–60 (11th Cir. 2012)). When Plaintiffs devote resources to purchasing printers and printing off applications to collect wet signatures, App. 40-41, 43, 45, they divert resources away from other projects in a manner that may comport with their missions of registering voters but diminishes their ability to

engage in those other projects due to the unlawful government-imposed Wet Signature Requirement. That suffices for standing purposes.[3]

State Defendants do not identify any authority that diminishes the strength of Plaintiffs' organizational standing allegations. Instead, they turn to cases in different procedural postures to imply that Plaintiffs must meet some higher standard of proof. *Georgia Republican Party*, 888 F.3d at 1201, applied the summary judgment standard; *Georgia Latino Alliance for Human Rights*, 691 F.3d at 1257, was on a motion for preliminary injunction; and *NAACP v. City of Kyle*, 626 F.3d 233, 238 (5th Cir. 2010), *Common Cause/Georgia*, 554 F.3d at 1348, and *City of S. Miami v. Governor*, 65 F.4th 631, 634 (11th Cir. 2023), were all decided after bench trials. None of those cases required plaintiffs to describe specific programs or projects at the pleading stage, and consequently none supports reversing the district court's standing decision.

### B.    Plaintiffs have sufficiently alleged associational standing.

Plaintiffs DRF, NAACP, and Florida Alliance separately have sufficiently alleged associational standing because their members or constituents would have standing, the relevant interests are germane to organizations' purposes, and neither

---

[3] State Defendants suggest that Vote.org's organizational injury equates to "[l]osing out on a business opportunity," State Br. 36, but Vote.org is a mission-oriented 501(c)(3) organization. App. 39.

19

the claim nor the relief sought requires the participation of individual members or constituents. *Browning*, 522 F.3d at 1160. State Defendants argue that Plaintiffs must identify named members who have suffered harm and that failure to do so warrants dismissal for lack of standing. State Br. 27-35. But at this stage, "the rule in this Circuit is that organizational plaintiffs need only establish that 'at least one member faces a realistic danger' of suffering an injury." *Schalamar Creek Mobile Homeowner's Ass'n, Inc. v. Adler*, 855 F. App'x 546, 552 (11th Cir. 2021) (quotation marks omitted). "[R]equiring specific names at the motion to dismiss stage is inappropriate." *Am. Coll. of Emergency Physicians v. Blue Cross & Blue Shield of Ga.*, 833 F. App'x 235, 240 n.8 (11th Cir. 2020). Plaintiffs have adequately alleged that certain members face a realistic danger of injury, *see, e.g.*, App. 41, and as such State Defendants' primary attack against Plaintiffs' associational standing fails.

State Defendants also argue that DRF cannot establish associational standing because it does not have members. *See* State Br. 33-35. But DRF represents millions of disabled Floridians, some of whom are not yet registered to vote and lack stable housing or easy access to transportation. Although DRF does not have "members," "ha[ving] constituents rather than members does not deprive [an entity] of Article III standing." *Doe v. Stincer*, 175 F.3d 879, 885 (11th Cir. 1999) (citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 344 (1977)). Just like the Protection and Advocacy ("P&A") system in *Stincer*, DRF's constituents "possess

20

the means to influence the priorities and activities [DRF] undertakes," 175 F.3d at 886, because the statutes governing DRF require that it (1) include "individuals with disabilities" who are eligible or have received "services through the system" or their families; (2) "establish an advisory council … on which a majority of the members shall be … individuals with developmental disabilities" or their families; and (3) "establish a grievance procedure for clients or prospective clients of the system to ensure that individuals with disabilities are afforded equal opportunity to access the services of the system." 42 U.S.C. § 15044(a)(1)(B), (a)(5); 29 U.S.C. § 794e(f)(6); *see also* App. 43-44. As in *Hunt*, DRF "serves a specialized segment of the State[] … which is the primary beneficiary of its activities, including the prosecution of this kind of litigation." 432 U.S. at 344; *see also* App. 44 (citing 42 U.S.C. § 15043). Accordingly, DRF "may sue on behalf of its constituents like a more traditional association may sue on behalf of its members." *Stincer*, 175 F.3d at 886; *see also Yelapi v. DeSantis*, 525 F. Supp. 3d 1371, 1377 n.4 (N.D. Fla. 2021) ("DRF has associational standing because its members have standing and this case is germane to DRF's purpose.").

**C.    Plaintiffs are appropriate parties to challenge the Wet Signature Requirement under the Materiality Provision and Section 1983.**

Because Plaintiffs have standing under both the Materiality Provision and Section 1983, Plaintiffs need not maintain this suit only on behalf of individuals denied the right to vote under the Wet Signature Requirement and prudential

standing does not apply. *Lexmark Int'l, Inc. v. Static Control Components*, 572 U.S. 118, 128 (2014) (holding courts "cannot limit a cause of action that Congress has created merely because 'prudence' dictates"). But even if they needed to establish "prudential" standing in the manner State Defendants argue, State Br. 44–48, Plaintiffs satisfy the standard on multiple grounds.

The plain terms of the Materiality Provision encompass Plaintiffs' claim based on organizational and associational standing. Subsection (d) of the Provision expressly recognizes that federal district courts have jurisdiction over actions to enforce the law "without regard to whether the party aggrieved shall have exhausted any administrative or other remedies that may be provided by law." 52 U.S.C. § 10101(d). Congress's use of the term "aggrieved" person or party belies an intent "to define standing as broadly as is permitted by Article III of the Constitution." *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 (1972); *see also FEC v. Akins,* 524 U.S. 11, 19 (1998) ("History associates the word 'aggrieved' with a congressional intent to cast the standing net broadly—beyond the common-law interests and substantive statutory rights upon which 'prudential' standing traditionally rested."). Congress could have limited jurisdiction to only "individuals seeking to vote," but instead chose a term that permits enforcement by the broadest array of plaintiffs.

22

Plaintiffs also have statutory standing under Section 1983. Section 1983 provides a remedy against state actors who cause "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The Materiality Provision's "focus" is "the protection of each individual's right to vote[.]" *Schwier v. Cox*, 340 F.3d 1284, 1296-97 (11th Cir. 2003). "Once a plaintiff demonstrates that a statute confers an individual right, the right is presumptively enforceable by § 1983." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002). Any "injured party" can sue under Section 1983. 42 U.S.C. § 1983.

State Defendants contort the holding of *Schwier* to argue that this Court has held only individual voters have the right to enforce the Materiality Provision under Section 1983. State Br. 44-45. But *Schwier* held no such thing. The portion of *Schwier* that State Defendants selectively cite held that the "focus of the text is [] the protection of each individual's right to vote." 340 F.3d at 1296; *see* State Br. 44-45. But this language does not limit *Schwier*'s holding that the Materiality Provision "may be enforced by a private right of action under § 1983" to only individual plaintiffs. 340 F.3d at 1297. Plaintiffs seek to protect individuals' rights to vote by bringing this litigation, just as this Court expressly blessed in *Schwier*.

Even if they needed to establish prudential standing for individuals denied the right to vote under the Wet Signature Requirement, Plaintiffs have done so. Each Plaintiff has a close relationship with its users, constituents, and members—in

23

particular, DRF is federally authorized to "pursue legal, administrative, and other appropriate remedies" "to ensure full participation in the electoral process for individuals with disabilities [in Florida], including registering to vote." 42 U.S.C. § 15043(a)(2)(A)(i); 52 U.S.C. § 21061(a). Plaintiffs' users, constituents, and members also face a "hindrance" in protecting their interests, given the "small financial stake involved and the economic burdens of litigation." *Powers v. Ohio*, 499 U.S. 411, 415 (1991); App. 39, 41, 43-44. As such, Plaintiffs can advance the Materiality Provision claim on their behalf.

### D.    Private plaintiffs can enforce the Materiality Provision under Section 1983.

State Defendants have already "acknowledge[d]" that "binding circuit precedent exists" holding that the Materiality Provision "is amenable to private enforcement via Section 1983," App. 164. 166, yet they make a halfhearted, one-page argument that the Materiality Provision is not enforceable by a private right of action to preserve that issue for further review. State Br. 49-50. This Court and the United States Supreme Court have already rejected this argument. "By its terms, § 1983 is available to enforce every right that Congress validly and unambiguously creates." *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 192 (2023). The Materiality Provision's unambiguous protection of the right to vote makes it presumptively enforceable under Section 1983. *See Schwier*, 340 F.3d at 1296-97.

24

To defeat that presumption, State Defendants must "demonstrat[e] that Congress did not intend that remedy." *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 120 (2005). Because the Materiality Provision does not "directly" state that Section 1983 is unavailable as a remedy, State Defendants must show that Congress intended the Materiality Provision's remedial scheme "to be the exclusive avenue through which a plaintiff may assert [their] claims," which requires "incompatibility between enforcement under § 1983 and the enforcement scheme that Congress has enacted." *Talevski*, 599 U.S. at 187 (cleaned up).

To this end, State Defendants point to 52 U.S.C. § 10101(e). State Br. 49. But subsection (e) is in no way incompatible with a private right of action under Section 1983; instead it refers to proceedings initiated by the Attorney General where, "upon request of the Attorney General," the court finds a "pattern or practice" of vote denial "on account of race or color," allowing affected members of the targeted racial group to "appl[y]" for an "order declaring [the applicant] qualified to vote." 52 U.S.C. § 10101(e). This process is not comprehensive such that it is the "exclusive avenue through which a plaintiff may assert [their] claims." *Talevski*, 599 U.S. at 187 (cleaned up). Rather, this procedure takes effect only under a very specific set of circumstances that excludes a broad swath of potential Materiality Provision claims. The narrow application procedure contained in subsection (e) is thus entirely

inapposite to—and in no way "incompatible with"—private enforcement under § 1983. *Abrams*, 544 U.S. at 120.

## CONCLUSION

The Court should reverse the district court's order dismissing Plaintiffs' claim and remand to the district court for further proceedings.

Dated: June 5, 2024

Respectfully submitted,

*/s/ Frederick S. Wermuth*
Frederick S. Wermuth
KING, BLACKWELL, ZEHNDER &
WERMUTH, P.A.
P.O. Box 1631
Orlando, FL 32802-1631
Telephone: (407) 422-2472
fwermuth@kbzwlaw.com

Abha Khanna*
ELIAS LAW GROUP LLP
1700 Seventh Ave., Suite 2100
Seattle, Washington 98101
Telephone: (206) 656-0177
akhanna@elias.law

Justin Baxenberg*
Renata O'Donnell*
ELIAS LAW GROUP LLP
250 Massachusetts Ave NW, Ste. 400
Washington, DC 20001
Telephone: (202) 968-4490
jbaxenberg@elias.law
rodonnell@elias.law

*Admitted Pro Hac Vice*

*Counsel to Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE

This response complies with the type-volume limitation of Rule 32(a)(7)(B) because it contains 5870 words, excluding the parts that may be excluded. This response also complies with Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface, 14-point Times New Roman.

*/s/ Frederick S. Wermuth*

## CERTIFICATE OF SERVICE

This brief has been filed by CM/ECF and served via CM/ECF on all counsel of record.

Dated: June 5, 2024

*/s/ Frederick S. Wermuth*